[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-16122
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 28, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00518-CR-T-17MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO HURTADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 28, 2007)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Antonio Hurtado[1] appeals his 235-month sentence for conspiracy to possess three kilograms or more of ephedrine with intent to manufacture a controlled substance, in violation of 21 U.S.C. §§ 846, 841(c). On appeal, Hurtado argues that his sentence was unreasonable, within the meaning of United States v. Booker, 543 U.S. 220 (2005). After careful review, we affirm.

When reviewing a sentence imposed by the district court, we first ensure that the district court correctly calculated the Sentencing Guidelines range. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005). We then review the sentence for reasonableness in light of the properly calculated range and the 18 U.S.C. 3553(a) factors. United States v. Martin, 455 F.3d 1227, 1237 (11th Cir. 2006). Included among the § 3553(a) factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for deterrence; (5) the need to protect the public; (6) the Sentencing Guidelines range; and (7) the need to avoid unwanted sentencing disparities. 18 U.S.C. § 3553(a). We review only the final

[1] The government says that the defendant's given name is Orlando Gomez Soberanis. The parties refer to the defendant as Antonio Hurtado, and that is the name under which this defendant was indicted. In its brief, the government states that it has not yet amended the indictment to reflect Hurtado's given name. The judgment refers to the defendant as "Antonio Hurtado, True Name: Orlando Gomez Soberanis."

sentence for reasonableness, rather than each individual decision made during the sentencing process. Winingear, 422 F.3d at 1245. Reasonableness review is "deferential" and "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

The facts relevant to our reasonableness review are these. On December 1, 2005, Hurtado and three co-defendants were indicted for conspiring to possess a listed chemical with the intent to manufacture a controlled substance, in violation of 21 U.S.C. §§ 846, 841(c). Hurtado pled guilty and proceeded to sentencing.

According to the presentence investigation report ("PSI"), sometime in November 2005, Hurtado, co-defendants Araceli Payan-Morales and Fortino Salto-Salgado, and a confidential informant ("CI") met in Florida and discussed the purchase of ephedrine, which is a methamphetamine precursor. At a subsequent meeting, Salto-Salgado introduced co-defendant Nebo Oriosegy to the CI as his partner in the ephedrine venture and stated that they had $200,000 to pay for the ephedrine. Salto-Salgado had previously negotiated the purchase price of $50,000 per 25-kilogram container. About a week later, Salto-Salgado, Payan-Morales, and Hurtado met the CI again and Salto-Salgado indicated that they had almost secured

all of the funds necessary for the purchase. Three days later, on November 15, 2005, the CI met with Salto-Salgado, Payan-Morales, Oriosegy, and appellant Hurtado to complete the sale. Salto-Salgado told the CI that the vehicle in which Oriosegy and Payan-Morales had traveled to the meeting contained $100,000 in cash. The vehicle subsequently was driven to a secure location, where $100,000 in cash was found under the front seat. As instructed by Salto-Salgado, at the secure location, two 25-kilogram canisters, which in actuality contained "sham" ephedrine, were placed in the vehicle's trunk. All four defendants then left the secure location, with Oriosegy and Payan-Morales in the vehicle transporting the canisters and Salto-Salgado and Hurtado following in a different vehicle. As the defendants traveled toward Oriosegy's residence, they were stopped and arrested.

The presentence investigation report ("PSI") recommended a base offense level of 38, pursuant to U.S.S.G. § 2D1.11(a), (d), because Hurtado's offense involved more than three kilograms of ephedrine, and a 3-level downward adjustment, under §§ 3E1.1(a), (b), because Hurtado accepted responsibility. With an adjusted offense level of 35 and a criminal history category IV, Hurtado faced an advisory Guidelines range of 235 to 293 months' imprisonment. Because the statutory maximum for Hurtado's offense was 240 months' imprisonment, his sentencing range was 235 to 240 months' imprisonment.

Over Hurtado's objections, the district court adopted the PSI and found the Guidelines range to be 235 to 240 months' imprisonment. The court then provided Hurtado with the opportunity to present mitigating evidence or argument. In response, defense counsel asked the court to consider the § 3553(a) factors and to impose a 132-month sentence. The government contended that a sentence at the low end of the applicable Guidelines range was appropriate. The district court also considered Hurtado's statement apologizing for his actions. The court then indicated that it had considered the advisory guidelines and all of the § 3553 factors and sentenced Hurtado to 235 months' imprisonment followed by three years of supervised release, noting that the sentence imposed was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing," and stating that Hurtado was a source of poison "[a]nd providing that for people in this country is destroying our country." The court indicated that Hurtado would be eventually deported and ordered him to forfeit all applicable assets and property, including $100,000 in U.S. currency. It also recommended that Hurtado receive secondary education in English and Spanish, be placed in a 500-hour substance-abuse counseling program, and receive vocational training in tailoring or auto body work. This appeal followed.

On appeal, Hurtado argues the district court inadequately considered the § 3553(a) factors, in light of the following mitigating circumstances: (1) Hurtado served only as an interpreter for co-conspirator Salto Salgado; (2) Hurtado had no role in the decisionmaking or negotiations for the ephedrine sales; (3) Hurtado was unaware of the amount of ephedrine or money involved; and (4) Hurtado neither handled any ephedrine nor was in the vehicle transporting the ephedrine or money. We are unpersuaded.

From our review of the record, with particular attention to the sentencing transcript, it is clear that the district court considered the Guidelines range, the calculation of which Hurtado does not challenge in this appeal, and the § 3553(a) factors, prior to imposing a within-range sentence. At the sentencing hearing, the district court rejected Hurtado's mitigating arguments that any role he played in the offense was minor and that a sentence of 132 months was appropriate, instead finding that he was a source of the poison that is destroying this country. Moreover, the court recommended that Hurtado receive secondary education in English and Spanish, be placed in a 500-hour substance abuse counseling program, and receive vocational training in tailoring or auto body work. On this record, Hurtado has not met his burden to establish that his sentence was unreasonable or greater than necessary to achieve the purposes of sentencing under § 3553(a).

**AFFIRMED.**